**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN R. STABLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 06-0237-WS-M** |
| | ) | |
| **TRANSPORTATION INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on plaintiff John Stabler's Motion to Remand (doc. 9) this action to the Circuit Court of Marengo County, Alabama. The Motion has been briefed and is ripe for disposition.[1]

**I.     Background.**

This case springs from a tangled web of litigation that encompasses multiple actions in both the Circuit Court of Marengo County, Alabama and this District Court. A brief overview of these intertwined actions will be helpful in placing this piece of the dispute in its proper context.

On December 26, 2002, plaintiff John R. Stabler ("Stabler") sustained injuries and his co-worker, Robert Lee Calhoun ("Calhoun"), was killed in an explosion at the Linden Lumber Company, Inc. ("Linden") plant in Marengo County, Alabama, while they were performing assigned duties for Linden. Stabler proceeded to file suit against Linden in Marengo County Circuit Court for recovery of workers' compensation benefits arising from the explosion, and later amended his complaint to assert negligence and wantonness claims against Forest Products Engineering, Inc. ("Forest"), based on Forest's alleged role as a general advisor and its alleged

---

[1]       Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

knowledge of the dangerous condition that culminated in the explosion.[2]

The parties are not in full agreement as to exactly what happened next; however, it appears that Forest notified its insurance carrier, Transportation Insurance Company ("Transportation"), of the pendency of the Stabler lawsuit, but that Transportation did not immediately provide a defense or otherwise indemnify Forest.  When Transportation failed to take action within a certain time frame, Forest negotiated an agreement with Stabler to allow entry of consent judgment against Forest in Stabler's favor in the amount of $1 million.  This agreement was subject to the provisos that Stabler would execute said judgment only against insurance funds (*i.e.*, against Transportation, which had no knowledge of the agreement and did not consent to it), not against Forest or its principal, and that Forest would assign to Stabler its rights to the insurance proceeds allegedly owed by Transportation under said judgment.  On February 21, 2006, the Circuit Court of Marengo County entered a consent judgment in favor of Stabler and against Forest in the amount of $1 million.  On March 10, 2006, Transportation filed a petition in intervention and motion to set aside the consent judgment, as well as a motion to reconsider, vacate or set aside the consent judgment.  Transportation's position was that it had had multiple communications with Forest about providing a defense before the Stabler/Forest settlement and consent judgment occurred, that Transportation had never refused to provide a defense, and that it had decided to defend Forest before receiving notice of the settlement and consent judgment.  As one might expect, Stabler opposed Transportation's efforts to set aside the consent judgment.  The Court's understanding is that Transportation's motions to intervene and to set aside, vacate or otherwise unwind the consent judgment remain pending in state court, and have not yet been ruled on.  Transportation has argued in that litigation that if intervention is denied and if the consent judgment is not set aside, then Transportation will challenge whether the consent judgment was reasonable and entered into in good faith.

With knowledge of Transportation's pending legal challenges to the consent judgment and without waiting for a conclusive determination by Alabama courts as to whether that consent

---

[2]    Calhoun's widow filed a parallel lawsuit against Linden and Forest in Marengo County, represented by the same counsel as Stabler and propounding theories of relief against those defendants that were analogous to those interposed by Stabler.

judgment would remain in place, Stabler filed Process of Garnishment against Transportation in Marengo County Circuit Court on March 27, 2006. (The same procedure was followed in the parallel Calhoun action.) Three days later, Stabler filed a counterclaim in the Marengo County action seeking a declaratory judgment as to Transportation's rights and obligations under the subject insurance policy, and specifically requesting that the Alabama court "[e]nter a judgment declaring that there is coverage under the aforementioned insurance policy in connection with the" consent judgment and "[e]nter a judgment declaring that [Transportation] has an obligation to indemnify [Forest]." (Doc. 7, at Exh. 4.)

It is at this point in our narrative that the high-velocity proliferation of litigation commenced in earnest. On April 17, 2006, Transportation filed a Notice of Removal (doc. 1) removing the Stabler garnishment proceeding to this District Court on grounds of diversity of citizenship, pursuant to 28 U.S.C. § 1332, and creating the instant federal action. Several weeks later, Transportation filed a separate Notice of Removal removing the Calhoun garnishment proceeding to this District Court, where it now resides on the undersigned's docket under the caption *Lula Calhoun, et al. v. Transportation Insurance Company*, Civil Action No. 06-0300-WS-M.[3] Also, on March 17, 2006, without awaiting a ruling by the state court on its previously filed motions to intervene and to vacate the consent judgment, Transportation initiated another federal lawsuit by filing a declaratory judgment action against Forest, Calhoun and Stabler, asking this Court to declare that it has no obligation to pay the consent judgments against Forest, or otherwise to defend or indemnify Forest in connection with the Marengo County suits. That

---

[3]        Despite the fact that the same counsel is representing Transportation in both this action and the *Calhoun* garnishment proceedings, and despite the fact that both cases were removed to federal court by the same attorney within weeks of each other, and despite the fact that the legal and factual issues presented in the two garnishment actions are identical, removing counsel failed to designate these two cases as "related cases" in the civil cover sheet for the *Calhoun* removal. If *Stabler* and *Calhoun* are not "related cases," then there is no such thing. The result of this omission was that this District Court's case assignment process could not function properly, such that *Calhoun* was originally assigned to a different district judge's docket, notwithstanding its substantively identical posture, leaving court personnel to discover the near-total overlap on their own and initiate transfer proceedings to place *Stabler* and *Calhoun* on the same judge's docket. The resulting inefficiencies could have been avoided had removing counsel simply completed the civil cover sheet accurately, which counsel is admonished to do in future appearances in this District Court.

-3-

action is captioned *Transportation Insurance Co. v. Forest Products Engineering, Inc. et al.*,
Civil Action No. 06-0165-WS-M, and is now on the undersigned's docket.[4]  In effect, the
declaratory judgment action requests an order nullifying the garnishment proceedings and
excusing Transportation from any liability or duty to defend in the Marengo County cases.

At latest count, then, there are no fewer than five lawsuits (three in federal court, two in
state court) pertaining to Calhoun and Stabler's claims for damages arising from the December
2002 accident.  In all of these actions, Transportation is endeavoring (either directly or
indirectly) to litigate identical coverage and liability issues.[5]  Stabler now seeks to have this
garnishment action remanded to Marengo County Circuit Court on the grounds that diversity of
citizenship is lacking; that the garnishment action is an ancillary proceeding and therefore not
removable; that removal is untimely and fails to include all papers filed in the underlying state
court action; that Alabama substantive law forbids removal of garnishment actions; and that
principals of comity and federalism require remand.  The parties have been afforded a full
opportunity to brief these issues.

## II.    Legal Standard for Motion to Remand.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441

---

[4]      Regrettably, Transportation's counsel (the same counsel representing it both of
the garnishment proceedings) neglected to identify the garnishment actions as "related cases" in
the civil cover sheet accompanying the declaratory judgment action filing.  As a result, that
action was initially assigned to yet a third district judge's docket, requiring further expenditure
of judicial resources to disentangle the dockets of judges and place all of these obviously related
cases on the docket of a single judge.

[5]      Transportation bears primary responsibility for this morass, having morphed two
lawsuits into five even though all relevant legal and factual issues had been joined or appeared
readily capable of being joined in the two pre-existing actions.  That said, Stabler and Calhoun's
counsel is not immune from blame, given their precipitous filing of Process of Garnishment
against Transportation despite actual knowledge that Transportation was challenging the validity
and enforceability of the consent judgment.  *See generally State Farm Mut. Auto Ins. Co. v.
Brown*, 894 So.2d 643, 648 (Ala. 2004) (third party cannot bring action against responsible
party's insurer "absent a final judgment against its insured"); Ala. Code § 6-6-390 ("no
garnishment shall issue prior to a final judgment").  Thus, escalation on both sides contributed to
the unfortunate quagmire in which this litigation now rests, with the attendant exponential
increases in burdens on both counsel and the courts (federal and state) to sift through the rubble
and restore order.

and, therefore, must establish the existence of federal jurisdiction.  *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345  (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

**III.  Analysis.**

> **A.    *The § 1332(c)(1) Issue.***

The critical jurisdictional question posed here is whether the "direct action" limitation of 28 U.S.C. § 1332(c)(1) applies, so as to strip this Court of diversity jurisdiction.  That section provides, in pertinent part, "that in any ***direct action*** against the insurer of a policy or contract of liability insurance ..., to which action the insured is not joined as a party-defendant, ***such insurer shall be deemed a citizen of the State of which the insured is a citizen***, as well as of any State by which the insurer has been incorporated and of the state where it has its principal place of business."  *Id.* (emphasis added).  Stabler is a citizen of Alabama, and Transportation's state of incorporation and principal place of business are Illinois; however, Forest (Transportation's insured) appears to be a citizen of Alabama for diversity purposes.  If the "direct action" statute applies, then Transportation assumes Forest's Alabama citizenship, and is therefore non-diverse as to Stabler, so as to defeat diversity jurisdiction and require remand.  By contrast, if Stabler's Process of Garnishment is not a "direct action," then the citizenship of Forest (which is not a party to this garnishment action) does not count against Transportation for diversity purposes,

and complete diversity would remain, conferring federal jurisdiction.

At the Court's request, the parties briefed the issue of whether these garnishment proceedings are properly considered a "direct action" for § 1332(c)(1).  The parties' research reveals a badly splintered division among federal courts on this question, with little binding authority to light the way.  *Compare Wheelwright Trucking Co. v. Dorsey Trailers, Inc.*, 158 F. Supp.2d 1298, 1301 (M.D. Ala. 2001) ("under the modern trend, a 'direct action' can include post-judgment garnishments brought by a judgment creditor against the judgment debtor's commercial insurer"); *Boston v. Titan Indem. Co.*, 34 F. Supp.2d 419, 424 (N.D. Miss. 1999) (deeming garnishment proceeding a "direct action," as insurer was being sued not for its wrongful conduct against judgment creditor, but instead to collect judgment entered against its insured); *Reko v. Creative Promotions, Inc.*, 70 F. Supp.2d 998, 1003-04 (D. Minn. 1999) (similar); *Sherman v. Pennsylvania Lumbermen's Mut. Ins. Co.*, 21 F. Supp.2d 543, 545 (D. Md. 1998) (similar); *Prendergast v. Alliance Gen. Ins. Co.*, 921 F. Supp. 653, 655 (E.D. Mo. 1996) (similar) *with Hayes v. Pharmacists Mut. Ins. Co.*, 276 F. Supp.2d 985, 987 (W.D. Mo. 2003) (holding that garnishment proceeding is not a direct action because plaintiff is not suing insurer to establish insured's liability, which has already been determined, but is instead suing insurer to establish insurer's liability); *Freeman v. Walley*, 276 F. Supp.2d 597, 600-02 (S.D. Miss. 2003) (declaring that garnishment proceeding is not direct action because direct action is suit against another's insurer without joining insured and without having first obtained judgment against insured); *Hipke v. Kilcoin*, 279 F. Supp.2d 1089, 1092-93 (D. Neb. 2003) (concluding that § 1332(c)(1) does not apply in garnishment context against liability insurer because direct actions are limited to tort claims to determine liability, while garnishment is a contract claim to determine coverage); *Davis v. Carey*, 149 F. Supp.2d 593, 600 (S.D. Ind. 2001) (opining that "direct action," as intended by Congress, is limited to cases in which creditor sues insurer without joining insured as a defendant or first obtaining judgment against insured).

Upon review of these conflicting authorities, no clear consensus or majority view emerges from the fractured lines of precedent.  Although it is not eager to take sides in a debate characterized by no clear answers, a relative dearth of appellate guidance, and superficially sensible holdings in both camps, the Court must do so, given that the Motion to Remand and the existence of federal jurisdiction both hinge on whether this case is a "direct action" for purposes

of § 1332(c)(1).  The Eleventh Circuit has not specifically examined whether suits by judgment creditors against the insurers of judgment debtors qualify as direct actions; however, it has explained that the "direct action" exception turns on "the cause of action asserted against the defendant insurer, not the relationship of the insurer to the insured."  *Fortson v. St. Paul Fire and Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985).  To be considered a "direct action" under § 1332(c)(1), a claim must be one in which "a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer ***without joining the insured or first obtaining a judgment against him***."  *Id.* (emphasis added); *see also Hernandez v. Travelers Ins. Co.*, 489 F.2d 721, 723 (5th Cir. 1974) (similar).  The method to this madness is that if an aggrieved third party sues a tortfeasor's insurer without first securing judgment against the tortfeasor, then the insurer and tortfeasor are unified in their interest against the plaintiff.  In that scenario, the insurer is essentially standing in the shoes of the tortfeasor and defending the tortfeasor's interests by arguing that the tortfeasor is not liable to the aggrieved plaintiff, so it is only logical to superimpose the tortfeasor's citizenship on the insurer.  By contrast, however, if the plaintiff can wait to sue the insurer until after entry of judgment against the tortfeasor, then the tortfeasor and plaintiff's interests are aligned against the insurer, because both insured and plaintiff have a compelling interest in having the judgment paid by insurance proceeds.  In that context, the insurer is litigating its own coverage and liability, not that of its insured.  Under such circumstances, where the interests of insurer and insured are adverse and the insurer is litigating its own liability (not that of its insured), it would be counterintuitive to ascribe the insured's citizenship to the insurer for diversity purposes.

With due recognition of the existence of credible precedents to the contrary, the Court adopts the definition of "direct action" as articulated by the Eleventh Circuit in *Fortson* and by the old Fifth Circuit in *Hernandez*, and as supported by the policy rationales set forth above. That definition limits § 1332(c)(1) "direct actions" to those in which an aggrieved plaintiff files suit against the wrongdoer's insurer without either joining the wrongdoer as a defendant or first obtaining a judgment against the wrongdoer.  In this case, Stabler initiated garnishment proceedings against Transportation only after securing a judgment against Forest, Transportation's insured.  Indeed, Alabama law prohibited Stabler from commencing garnishment proceedings against Transportation unless he first obtained a judgment against

-7-

Forest.  *See* Ala. Code § 6-6-390; *Bailey Realty & Loan Co. v. Bunting*, 19 So.2d 609, 610 (Ala. 1944).  Because Stabler obtained a judgment against Forest before initiating a garnishment action against Forest's insurer, which judgment was a precondition to said garnishment, this case is not a "direct action" for § 1332(c)(1) purposes.[6]  Accordingly, Transportation is properly deemed a citizen of Illinois for diversity purposes, and Forest's Alabama citizenship does not accrue to Transportation here.  This action is between citizens of different states and involves an amount in controversy in excess of $75,000; therefore, federal subject matter jurisdiction properly lies pursuant to 28 U.S.C. § 1332, and remand is not warranted on jurisdictional grounds.

> **B.**     ***Miscellaneous Grounds for Remand.***

In addition to the jurisdictional issue, Stabler posits a host of alternative reasons for seeking remand, including (a) this garnishment proceeding is not "separate and independent" and can be removed only if the entire Marengo County action is removable; (b) Transportation violated timeliness requirements for removal, and failed to include copies of all pleadings, process and orders with its removal notice; and (c) Alabama substantive law requires that the garnishment proceeding remain in Marengo County.  These contentions may be dispatched quickly.

Stabler argues that this action must be remanded to state court because the removed garnishment proceeding is not a separate and independent proceeding from the matters that remain in state court.  Stabler reasons that because the garnishment proceeding is not independent, the entire Marengo County suit would have to be removed, which could not happen because Forest is non-diverse from Stabler.  However, the clear weight of authority is that garnishment proceedings are in fact separate and independent actions that are removable if all

---

[6]     The above-described policy justifications against "direct action" status are particularly apt here.  Far from being aligned with Forest, Transportation is in a position of attempting to erase a consent judgment that Forest surreptitiously and unilaterally entered into with Stabler for the purpose of visiting seven-figure liability on Transportation.  Moreover, Transportation would be primarily litigating its own coverage defenses, rather than whether Forest is or is not liable to Stabler, in this action.  Given the widely divergent interests and apparent rancor between them, it would be inappropriate to affix Forest's citizenship on Transportation or to categorize this matter as a "direct action" against Transportation.

other jurisdictional prerequisites are satisfied.  *See, e.g., Webb v. Zurich Ins. Co.*, 200 F.3d 759, 760 (11th Cir. 2000) (noting that lower court correctly denied motion to remand garnishment proceedings that "were a separate and independent cause of action with diversity of the parties"); *Butler v. Polk*, 592 F.2d 1293, 1295 (5th Cir. 1979) (opining that "garnishment actions against third-parties are generally construed as independent suits, at least in relation to the primary action"); *Berry v. McLemore*, 795 F.2d 452, 455 (5th Cir. 1986) ("The writ of garnishment, under the clear precedent of this court, is an action separate and independent from the action giving rise to the judgment debt."); *Hipke*, 279 F. Supp.2d at 1092 (following *Butler*); *Johnson v. Great American Ins. Co.*, 213 F. Supp.2d 657, 661 (S.D. Miss. 2001) ("even though, procedurally, a garnishment action may be filed under the same number as the case in which the judgment was obtained, it is, in effect, an entirely separate lawsuit" and therefore removable under § 1441(a)); *Reko*, 70 F. Supp.2d at 1001 ("it has long been established that a garnishment proceeding is a suit or civil action within the meaning of those terms in the removal statute").  The Court agrees with these precedents that Stabler's garnishment action is in fact separate and independent for removal purposes.[7]

    As additional alleged defects in the removal process, Stabler asserts that this action was untimely removed and that the notice of removal is defective because it lacks copies of all papers from the state court action.  Neither argument is persuasive.  To be sure, 28 U.S.C. § 1446(b) requires a removal predicated on diversity to be completed within one year after commencement of the action.  However, the operative commencement date is March 27, 2006 (the date on which Stabler filed process of garnishment), not the date on which the underlying Marengo County

---

        [7]     Nor does the Court adopt Stabler's assertion that this garnishment action must be classified as an ancillary proceeding under Alabama law.  It is true that Alabama courts have so held.  *See, e.g., Rice v. State Farm Fire & Cas. Co.*, 628 So.2d 582, 583 (Ala. 1993) ("a post-judgment garnishment proceeding is an ancillary proceeding seeking satisfaction of a prior judgment, and not an original civil suit").  It is equally true, however, that federal law and not state law controls as to whether an action is removable under 28 U.S.C. § 1441.  *See Randolph v. Employers Mut. Liability Ins. Co.*, 260 F.2d 461, 463-64 (8th Cir. 1958) (state classification of garnishment proceedings is in no way binding on federal court's determination of whether garnishment is independent action for removal purposes); *Johnson v. Wilson*, 185 F. Supp.2d 960, 963 (S.D. Ind. 2002) (rejecting Indiana state court's characterization of garnishment proceeding as ancillary as not controlling for removal analysis).

Circuit Court proceedings began.  Transportation has plainly complied with the one-year deadline of § 1446(b).  Likewise, plaintiff is correct that § 1446(a) requires a removing defendant to include "a copy of all process, pleadings, and orders served upon" it with its removal papers, and that Transportation did not include all papers from the Marengo County action with its Notice of Removal.  But again, the relevant action here is the garnishment proceeding, not the entire underlying state court lawsuit; therefore, the Court finds that Transportation fully complied with § 1446(a) because, in effectuating removal, it was required to include only those papers relating to the garnishment proceeding.

Also, Stabler argues that Alabama law requires that writs of garnishment issue out of and return to the same court, and that removal is improper because it conflicts with that requirement by altering the return court.  Half-century-old Alabama precedent confirms that writs of garnishment to enforce judgments "must issue out of and be returnable to the court that renders the judgment."  *Pepperell Mfg. Co. v. Alabama Nat. Bank of Montgomery*, 75 So.2d 665, 669 (Ala. 1954).  However, plaintiff reads far too much into this authority.  Nothing in *Pepperell* purports to bar removal of garnishment proceedings; rather, it simply states the technical requirement that the writ itself must reflect that it was issued by and returnable to the same court.  Stabler's Process of Garnishment plainly satisfies *Pepperell*, inasmuch as it was both issued by and returnable to Marengo County Circuit Court.  That the garnishee opted to remove that Process of Garnishment in no way ran afoul of *Pepperell* or violated the requirement that the writ itself state that it is returnable to the same court that entered it.  The Court will not read into *Pepperell* a constraint on federal jurisdiction that is not there, nor will it extrapolate from that decision some sort of blanket prohibition on removal of garnishment actions in Alabama.  *See generally Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 917 (6th Cir. 2006) ("A state statute cannot divest a federal court of diversity jurisdiction.").

> C.      *Abstention.*

A cornerstone of Stabler's Motion to Remand is that this action should be remanded to state court pursuant to principles of comity and federalism because the state court is presently confronting identical legal and factual issues to those presented in the instant garnishment action, requiring this Court to rehash issues that are also being litigated in Marengo County.  (Motion, at 2, 6, 10-12; Reply Brief, at 2.)  Transportation's opposition brief is strangely silent on this

critical point.

It is well established that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (citation omitted). However, both Eleventh Circuit case law on comity and federalism, as well as the doctrine of *Colorado River* abstention, lend strong support to Stabler's position that federal jurisdiction should not be exercised in these circumstances. Both lines of authority proceed from the premise that while a federal court is not precluded from exercising jurisdiction if there is also a pending parallel state court action, "a district court is under no compulsion to exercise that jurisdiction where the controversy may be settled more expeditiously in the state court." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662-63, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) (per Rehnquist, J., with three Justices concurring and one Justice concurring in the judgment) (internal citations and quotation marks omitted).

          *1.*     *Comity and Federalism in the Eleventh Circuit.*

In *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169 (11th Cir. 1982), the Eleventh Circuit applied principles of federalism, comity and practicality to affirm the dismissal of a federal action where there was a parallel state action proceeding simultaneously. The *Haydu* court explained that "[p]rinciples of comity come into play when separate courts are presented with the same lawsuit," and that in such circumstances "one court must yield its jurisdiction to the other." *Id.* at 1173. In determining which court should yield jurisdiction, *Haydu* articulated the following rules of thumb: (a) "a court having jurisdiction over all matters in dispute should have jurisdiction of the case" to avoid fragmenting the dispute for resolution in two different fora; and (b) "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Id.* at 1173-74. In addition to comity considerations, *Haydu* emphasized the federalism concerns which "require that a federal court 'tread lightly' when a state proceeding is already underway. ... Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* at 1173.

Application of *Haydu* principles to this case counsels heavily in favor of abstention. The Marengo County court has jurisdiction over all aspects of this multifaceted dispute, including the state law claims as between Stabler and Forest. Those claims could not be litigated in federal

court, inasmuch as Stabler and Forest are both Alabama citizens, such that diversity jurisdiction would be lacking.  Common sense dictates that it would be far more efficient to allow a court with jurisdiction over all dimensions of a dispute to rule on it *in toto* than it would to carve the dispute into pieces, allocating certain issues for state court decision and others for federal court decision, all the while hoping that no inconsistencies emerge in the two tribunals' overlapping rulings.  Moreover, the Marengo County Circuit Court has been confronting issues arising from the December 2002 Linden explosion since March 2003, while this related garnishment action was removed in April 2006.  Finally, this Court finds that to allow this garnishment proceeding to go forward in federal court would, to a near certainty, lead to gratuitous interference with the state court proceedings.  At this very moment, the issue of the legitimacy of the consent judgment against Transportation is squarely before the Marengo County Circuit Court.  No doubt Transportation intends to reiterate those same arguments here in opposition to garnishment.  Should the state court vacate the consent judgment, then this action will be moot because there will no longer be a judgment on which Stabler might execute via writ of garnishment.  Should the state court leave the consent judgment intact, then Transportation will effectively be asking this Court to overrule that determination and vacate the consent judgment.  At best, conducting separate garnishment proceedings in federal court in these circumstances is superfluous and utterly unhelpful to resolving the parties' dispute.  At worst, it is interfering and meddling in state court business, raising the specter of inconsistent rulings and doing violence to bedrock principles of federalism and comity.

The foregoing analysis strongly supports abstention of federal jurisdiction.  Simply put, "[a]lthough comity is clearly a discretionary judicial concept, the concerns embodied therein and the equities asserted here compel a state court resolution of this matter."  *Haydu*, 675 F.2d at 1174.[8]

> 2.    Colorado River *Abstention.*

Although Stabler's briefs do not mention it by name, the *Colorado River* doctrine of

---

[8]    *But see Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Illinois*, 421 F.3d 835, 852 (9th Cir. 2005) (indicating that "[i]t is not clear to what extent comity remains an independent basis for abstention, available even when none of the settled comity-based abstention doctrines such as *Burford* and *Colorado River* apply").

judicial economy is implicit in Stabler's requests that this Court not exercise jurisdiction.  The *Colorado River* doctrine authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances." *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004); *see also Ambrosia Coal*, 368 F.3d at 1328 ("federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances").  Indeed, the Supreme Court has framed this doctrine as an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).  In applying *Colorado River*, the Court is mindful of the admonition that "[o]nly the clearest of justifications will warrant dismissal of the federal action" under that doctrine.  *Ambrosia Coal*, 368 F.3d at 1329 (citation omitted).

The Eleventh Circuit has identified six factors that district courts must consider in assessing whether *Colorado River* abstention is proper, to-wit: (i) whether any court has assumed jurisdiction over property, (ii) the relative inconvenience of the fora, (iii) the potential for piecemeal litigation, (iv) the temporal order in which each forum obtained jurisdiction, (v) whether state or federal law governs, and (vi) whether the state court is adequate to protect the parties' rights.  *See Ambrosia Coal*, 368 F.3d at 1331.  This Court "must weigh these factors with a heavy bias in favor of exercising jurisdiction." *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998).  No one factor is necessarily dispositive; rather, "the factors must be considered flexibly and pragmatically, not as a mechanical checklist." *Ambrosia Coal*, 368 F.3d at 1332. "One factor alone can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997.

Although the first two *Colorado River* factors do not favor abstention, the others point emphatically in that direction.  If federal jurisdiction is exercised here, piecemeal (or worse, duplicative) litigation will ensue with 100% certainty, as the parties will be litigating issues relating to coverage and the legitimacy and enforceability of the consent judgment in both these garnishment proceedings and in the ongoing state court litigation.  Such repetition and fragmentation may be easily and painlessly avoided, with no attendant incursions on the rights of any party, if this Court abstains.  Additionally, the Marengo County Circuit Court has been vested with jurisdiction concerning this dispute for more than three years, so it obtained

-13-

jurisdiction long before this District Court did. For this Court to leap into the breach now would be grossly inefficient, as it would oblige the undersigned to catch up on three years of underlying litigation to adjudge fairly the legal issues presented in the garnishment action, whereas the state court is already intimately acquainted with these circumstances and will need to ascend no such learning curve antecedent to its rulings. Furthermore, the substantive legal issues presented in the garnishment proceeding sound exclusively in state law, such that a state court would be better equipped than a federal court to resolve them. And there is no indication that the state court is in any way inadequate to safeguard Transportation's rights in this matter or that Transportation will not be afforded a full, fair opportunity to air its arguments against coverage, viability of the consent judgment, and enforcement of the consent judgment against it in the Marengo County Circuit Court. (Of course, if the state court denies Transportation that opportunity by refusing to allow it to intervene, then circumstances would be far different and the abstention question will need to be revisited.) Lastly, the state court is currently weighing ripe motions that, if granted, would moot this entire garnishment action by causing the underlying judgment to evaporate. It would be foolhardy to charge ahead with federal litigation under these circumstances. In sum, the undersigned is of the opinion that the unique and unusual posture of this action renders it one of those extraordinary cases in which *Colorado River* abstention would be highly appropriate to prevent undue encroachment on state court proceedings, waste of federal judicial resources, and duplication of effort by parallel courts, where the state court is far better equipped (in terms of familiarity with both the case and the governing state law) to rule on the merits than is the undersigned.

        3.    *Stay vs. Remand.*

        The Court is well aware that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Moorer*, 374 F.3d at 997 (citing *Colorado River*, 424 U.S. at 817-18); *but see 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (pointing out that "'virtually' is not 'absolutely'"). Nonetheless, this is one those "limited" or "exceptional" cases in which *Colorado River* abstention is warranted to prevent piecemeal litigation, to avoid misallocation of judicial resources, and to allow for efficient resolution of identical legal issues raised in federal proceedings that significantly postdate their state court counterparts. Separate and apart from *Colorado River* abstention, the doctrines of comity and

federalism as espoused by the Eleventh Circuit in *Haydu* demand abstention.  Otherwise, the issues of insurance coverage, legitimacy of the consent judgment, and enforcement of that consent judgment against Transportation would be litigated on a dual-track, presented to both this Court and the Marengo County Circuit Court for resolution.  In fact, those issues have already been presented to the state court, and at least some of them are ripe for ruling by the state court at this time.  For this Court to swoop in at the last minute and pluck those state law issues from the jaws of the state court that has been grappling with this case for more than three years would be the epitome of unwise, inefficient judicial administration and would amount to flagrant disregard of fundamental principles of comity and federalism.  Under the circumstances, abstention is the only appropriate course.

The remaining obvious question is whether this action should be remanded or stayed pending resolution of issues concerning coverage, liability of Transportation, and enforceability of the consent judgment in state court.[9]  The Eleventh Circuit recently held that "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine."  *Moorer*, 374 F.3d at 998. More importantly, the Supreme Court has held that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (affirming appeals court determination that district court improperly remanded damages action based on abstention principles); *see also Pompey v. Broward County*, 95 F.3d 1543, 1552 n.12 (11th Cir. 1996) ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles."); *Superior Beverage*, 448 F.3d at 913 (construing *Quackenbush* as holding that "a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law"); *Myles Lumber Co. v. CNA Financial Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (in the abstention context, "a threshold requirement that must be satisfied for a case to be subject

---

[9]       Given that Stabler's briefs contain no analysis of whether remand is permissible under the comity/federalism principles they cite, and given that Transportation's briefs neglect to address the comity/federalism issue at all, the undersigned examines the propriety of remand on abstention grounds with no assistance from the parties' written submissions.

to remand is that the complaint seek either equitable or otherwise discretionary relief"). This garnishment proceeding is in the nature of an action for damages, not one seeking injunctive or declaratory relief, inasmuch as Stabler seeks exclusively to recover certain funds from Transportation. Therefore, under *Quackenbush* and its progeny, it would be clear error for this Court to remand on abstention grounds. Rather, the appropriate (and indeed, the only permissible) remedy is for this action to be stayed until such time as the overlapping issues have been resolved by the state court.

**IV.    Conclusion.**

For all of the foregoing reasons, the Motion to Remand (doc. 9) is **denied**. The Court finds that subject matter jurisdiction properly lies pursuant to 28 U.S.C. § 1332, that the alleged defects in the removal process are not fatal to removal, and that Alabama substantive law in no way deprives this Court of jurisdiction. However, the Court also finds that principles of comity, federalism, avoidance of duplicative litigation in multiple fora, and efficient utilization of judicial resources render this case one of those extraordinary cases in which abstention is proper pursuant to *Haydu* and the *Colorado River* doctrine. For that reason, this action is **stayed** until such time as the Marengo County Circuit Court has fully resolved the issue of the viability of the consent judgment. Additionally, if Transportation is allowed to intervene in the state court action, the stay shall remain in place until such time as the Marengo County Circuit Court has adjudicated the issues of whether Transportation's insurance policy provides coverage to Forest for the claims at issue, and whether Transportation may be held legally responsible for paying the consent judgment.

To facilitate the Court's ability to monitor the status of this action, the parties are **ordered** to file joint status reports on or before the **fourth Friday of every month**, beginning in **August 2006**. These reports should, at a minimum, delineate the present status of the Marengo County Circuit Court litigation vis a vis the consent judgment, as well as the coverage and liability issues that lie at the heart of these stayed garnishment proceedings. Should any ruling from the state court render these proceedings moot, or should Stabler wish to withdraw his garnishment proceeding pending resolution of this cluster of legal issues that stand between him and recovery under the Transportation policy, the parties must promptly notify the Court in

-16-

writing.

DONE and ORDERED this 21st day of July, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE